ROBERT WISNIEWSKI P.C.
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
JOHN EDINBYRD, individually
and on behalf of a class of others similarly situated,

                Plaintiff,                **Docket No:**

  -against-

P.J. CLARKE'S ON THE HUDSON, LLC,      **CLASS ACTION**
P.J. CLARKE'S AT LINCOLN CENTER,       **COMPLAINT**
LLC, P.J. CLARKE'S RESTAURANT CORP.,
and DAVID MYERS,                          **JURY TRIAL**
                                                                         **DEMANDED**

                Defendants.
---------------------------------------------------------------X

## COMPLAINT

Plaintiff John Edinbyrd ("Plaintiff"), individually and on behalf of a class of all others similarly situated, by and through his attorneys, Robert Wisniewski P.C., as and for his Complaint against Defendants P.J. Clarke's on the Hudson, LLC ("P.J. Clarke's on the Hudson"), P.J. Clarke's at Lincoln Center, LLC ("P.J. Clarke's Lincoln"), P.J. Clarke's Restaurant Corp. (collectively the "Corporate Defendants"), and David Myers ("Myers" or "Individual Defendant") (Corporate Defendants and Individual Defendant collectively referred to as "Defendants"), and state as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Defendants individually and on behalf of a class of all

others similarly situated to recover damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New York Executive Law § 296 ("New York Human Rights Law"), and New York City Administrative Code § 8-107 ("New York City Human Rights Law").

2. This class action seeks to vindicate the rights of the many qualified African-American servers at Defendants' restaurants who were denied the opportunity to work as bartenders solely based on their race and color. Defendants have implemented unlawful hiring and promotion policies, administered by the all White supervisors who refuse to hire or promote deserving African-American applicants and employees to work as bartenders. As a result of these policies, Plaintiff and other African-American servers have been repeatedly denied well-deserved employment opportunities and promotions-without explanation, while less qualified non African-American applicants and employees have been hired and promoted as bartenders.

3. Plaintiff is a highly experienced African-American male, with more than twenty-six years of bartending experience.

4. Despite Plaintiff's considerable qualifications, Defendants' refused to hire Plaintiff as a bartender and repeatedly passed over Plaintiff for promotions solely because of his race and color.

5. Other African-American employees have faced a similar fate. In fact, upon information and belief, there has been a stark disparity in African-American bartenders in Defendants' restaurants, as opposed to African-American servers.

6. Upon information and belief, Defendants refuse to hire qualified African-American

individuals as bartenders, and opt to hire them as servers instead.

7. The lack of qualified African-American employees working as bartenders is a direct result of the secret and standard-less hiring and promotion policies that give high-level personnel unchecked direction to hand-pick non-African American candidates for hire and promotion while repeatedly overlooking more qualified African-American individuals.

## PARTIES, JURISDICTION AND VENUE

8. At all relevant times herein, Plaintiff Edinbyrd was and is a resident of the State of New York, Kings County.

9. At all times relevant herein, Plaintiff was covered by, and/or intended to benefit from, the provisions of Title VII, the New York Human Rights Law, and New York City Human Rights Law, in respect to the work he provided for Defendants.

10. At all relevant times herein, Defendant P.J. Clarke's on the Hudson was and is a foreign limited liability company duly organized under, and existing by virtue of, the laws of the State of Delaware, and having its principal place of business at 250 Vesey Street, New York, New York 10281.

11. At all relevant times herein, Defendant P.J. Clarke's Lincoln was and is a domestic limited liability company duly organized under, and existing by virtue of, the laws of the State of New York, and having its principal place of business at 44 W. 63rd St, New York, New York 10023.

12. At all relevant times herein, Defendant P.J. Clarke's Restaurant Corp. was a domestic business corporation duly organized under, and existing by virtue of, the laws of the State

of New York, and having its principal place of business at 915 3rd Ave, New York, New York 10022.

13. At all relevant times herein, Defendant Myers was and is a resident of the State of New York.

14. The Individual Defendant is the general manager of the Corporate Defendants and is Caucasian.

15. This Court has personal jurisdiction over the Corporate Defendant P.J. Clarke's Hudson in that it has transacted and still transacts substantial business and derived and still derives substantial revenue from services rendered in the State of New York.

16. This Court has personal jurisdiction over the Corporate Defendant P.J. Clarke's Lincoln in that is incorporated in the State of New York and has its principal places of business therein.

17. This Court has personal jurisdiction over the Corporate Defendant P.J. Clarke's Restaurant Corp. in that is incorporated in the State of New York and has its principal places of business therein.

18. This Court has personal jurisdiction over the Individual Defendant in that he is a citizen and resident of New York.

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under Title VII.  This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

20. Venue is proper pursuant to 28 U.S.C. § 1391(b), because substantial events giving rise to Plaintiff's claims occurred in this district, and one or more Defendants reside therein.

## JURY DEMAND

21. Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

*Plaintiff Edinbyrd's Qualifications and Employment History with Defendants*

22. Plaintiff Edinbyrd is a certified mixologist with twenty (20) years of bartending experience.

23. In addition to working as a bartender, Edinbyrd owned and operated Artenuda wine bar for approximately three years.

24. In or around late March 2017, Edinbyrd applied for a full-time position as a bartender at Defendants' restaurant located at 250 Vesey Street in New York City.

25. Edinbyrd interviewed with General Manager, David Myers and Assistant Manager, Alex (last name unknown) and successfully completed the two-step hiring process.

26. Despite Edinbyrd's extensive experience as a bartender, Myers advised that there were no bartender positions available and offered Edinbyrd a position as a full-time server.

27. Edinbyrd agreed to work for Defendants as a server with the understanding that he would be promoted to a bartender when the position became available.

28. Unaware of the agreement between Edinbyrd and Myers, Alex interviewed Edinbyrd and quickly offered him a position as a full-time bartender.

29. When Edinbyrd arrived for his first shift, he was informed that he would have to work as a server.

30. In or around April 2017, Defendants hired two Caucasian males in their late twenties to work as bartenders.

31. In or around early June 2017, Plaintiff observed a newly hired Caucasian exchange student from Ireland working as a bartender.

32. Upon information and belief, these individuals were unqualified for the position or had less bartending experience than Edinbyrd.

33. In or around mid June 2017, Edinbyrd asked Myers what it would take for him to be promoted to a bartender.

34. Myers made a disgusted gesture and walked away.

35. In or around July 2017, Defendants hired Kenneth (last name unknown), a Caucasian male in his late twenties to work as a bartender.

36. During his employment with Defendants, Edinbyrd has observed Defendants hire at least seven (7) less qualified, or unqualified, bartenders, including, but not limited to, Joseph (last name unknown), Marc (last name unknown), Johnny (last name unknown), and Kenneth (last name unknown).

37. None of the bartenders hired by Defendants were African-American.

38. To date, Defendants have failed to promote Edinbyrd to bartender despite his extensive experience.

39. Upon information and belief, there is a significant difference in compensation between a server and a bartender.

40. As a server, Edinbyrd works 37 hours per week and is paid at the New York State minimum wage rate of $7.25 per hour plus tips.

41. After receiving tips, Edinbyrd makes approximately $650.00 per week.

42. Upon information and belief, a bartender working the same amount of hours would make between $850.00 and $1,000.00 per week.

43. Defendants' failure to hire or promote Edinbyrd, a qualified individual, has adversely affected the terms and conditions of his employment.

44. Defendants' conduct was willful and intentional, and caused, and continues to cause Plaintiff emotional pain and suffering.

45. In or around June 2017, Plaintiff Edinbyrd applied for a bartender position at Defendants' restaurant located at 915 3rd Ave, and 44 W. 63rd Street in New York.

46. Despite his extensive experience as a bartender, Defendants refused to hire Edinbyrd.

47. Defendants' refusal to hire or promote Edinbyrd was and is solely because of his race and color.

48. Plaintiff remains employed as a server at Defendants' restaurant.

49. Defendants violations are continuous.

*Defendants' Secret Hiring and Promotion Process is Discriminatory*

50. Upon information and belief, Defendants hire qualified African-American employees seeking bartender positions as servers.

51. There is a significant difference in compensation between a server and a bartender as servers provide services to smaller crowds and receive less tips.

52. Bartenders are also provided opportunities to work at private social events in Defendants' restaurant and receive even more tips.

53. Upon information and belief, Defendants have no structured policy or procedure

governing the hiring and promotion of bartenders.

54. Race plays an impermissible role in all levels of the highly subjective hiring and promotions process. From the beginning to end, the process of being hired as a bartender or being promoted to one, is opaque and works against African-American individuals.

55. Plaintiff is a qualified individual who was repeatedly passed over for the bartender position.

56. Plaintiff was informed by Defendants that, despite his qualifications, there were no open bartender positions.

57. At the same time, non African-American employees with less to no experience were hired as, or promoted to work as bartenders.

58. Upon information and belief, Defendants fail to hire or promote qualified African-American individuals to bartender positions on the basis of their race and color.

59. As a result of the secret and standard-less hiring and promotion policies, Defendants are able to hand-pick non African-American candidates for hire and promotion opportunities while repeatedly passing up more qualified, or equally qualified, African-American candidates.

*Facts Regarding Corporate Defendants' Status as an Unified Operation*

60. Upon information and belief, the Corporate Defendants are controlled by the same owners, or owner groups, operating as an unified operation and upon information and belief, each provides mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and, therefore, must be treated as a single enterprise.

61. Upon information and belief, Corporate Defendants own and operate P.J. Clarke's restaurants from the following three locations:

    i) 915 3rd Ave, New York, NY 10022;

    ii) 250 Vesey St, New York, NY 10281; and

    iii) 44 W. 63rd St, New York, NY 10023.

62. Upon information and belief, Corporate Defendants set up each restaurant as the putative legal entity that facially appears to be a stand-alone business, but that the operation of these restaurants are a single enterprise, which is equally controlled by Corporate Defendants. Corporate Defendants share common ownership, exchange employees, use the same equipment, and have the same clients.

63. As a matter of economic reality, the Corporate Defendants are a single enterprise or are joint employers of the Plaintiff and, as a result, Corporate Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

*Facts Relating to the Defendants as Joint Employers*

64. At all relevant times herein, the Corporate Defendants were and are controlled by the Individual Defendant.

65. At all relevant times herein, the Individual Defendant conducted business as the Corporate Defendants.

66. At all relevant times herein, the Individual Defendant acted for and on behalf of the Corporate Defendants, with the power and authority vested in him as owner, officer, agent, and employee of the Corporate Defendants, and acted in the course and scope of his duty and function as owner, agent, employee, and officer of the Corporate Defendants.

67. The Individual Defendant had control over the conditions of employment of Plaintiff, including his hiring and firing, his work schedules, the rates and methods of payment of his wages, and the maintenance of his employment records.

68. At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendants.

69. As a matter of economic reality, all Defendants are joint employers of Plaintiff and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## CLASS ALLEGATIONS

70. Plaintiff brings all claims in this action pursuant to Fed. R. Civ. P. 23(b), on behalf of a class consisting of: All African-American servers of Defendants who, as of November 2014 or later, had the requisite bartending experience and were not hired or promoted to the bartender position based on race and color (collectively the " Class").

71. The Class is so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time, but it is believed to be more than twenty. For purposes of notice and other purposes related to this action, the identities and addresses of the Class members are known to Defendants and are readily available in their employment records.

72. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and all other members of Class sustained damages arising out of Defendants' conduct in violation of the state and city human rights laws. The Class members are employed, or were employed, by Defendants as servers and were improperly denied the opportunity to

work as bartenders. They enjoy the same statutory rights and protections, and have sustained similar types of damages as a result of Defendants' illegal conduct under the state and city human rights laws.

73. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex class action litigation.

74. Plaintiff does not have interests that are contrary to or in conflict with those of the other members of the Class.

75. The Named Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

76. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Class are:

(a) Whether Defendants have employed a discriminatory policy and practice of denying African-American employees promotions based on race;

(b) Whether Defendants had a standard-less and secretive process that allowed the all White supervisors to refuse to promote deserving African-American servers;

(c) Whether Defendants violated the state and city human rights laws as alleged herein by intentionally discriminating against Plaintiff and the Class; and

(d) Whether Defendants violated the state and city human rights laws as alleged herein by implementing a discriminatory policy and practice that had the effect of

      discriminating against Plaintiff and the Class.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Although the relative damages suffered by individual Class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' discriminatory promotion practices. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of court and public resources. Treating the claims as a class action would result in a significant savings of these costs. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

78. A class action will also allow for the redress of harm to employees who are unwilling or unable to affirmatively bring or opt into a lawsuit. Current and former employees are often afraid to assert their rights out of fear of direct or indirect retaliation because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity that allows for the vindication of their rights while eliminating or reducing these risks.

**FIRST CLAIM FOR RELIEF**
**(Discrimination based on Race under Title VII)**

79. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

80. Plaintiff and the class are employees within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

81. At all relevant times herein, Defendants were employers within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

82. Title VII, 42 U.S.C. § 2000e-2(a) makes in unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . .race."

83. Defendants discriminated against Plaintiff and the Class members by failing to promote or hire them as bartenders solely because their race.

84. Instead, Defendants hired and promoted unqualified or less qualified individuals to work as bartenders.

85. This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African-American applicants and servers, namely a standard-less and secretive process that allowed the all White supervisors to refuse to promote or hire deserving African-Americans as bartenders.

86. As a direct and proximate result of said discrimination, Plaintiff and the class suffered and continues to suffer actual damages, in forms including without limitation lost income,

mental anguish, and pain and suffering. They are also entitled to attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
(Discrimination based on Color under Title VII)

87. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

88. Plaintiff and the class are employees within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

89. At all relevant times herein, Defendants were employers within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

90. Title VII, 42 U.S.C. § 2000e-2(a) makes in unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . .color."

91. Defendants discriminated against Plaintiff and the Class members by failing to promote or hire them as bartenders solely because their color.

92. Instead, Defendants hired and promoted unqualified or less qualified individuals to work as bartenders.

93. This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African-American applicants and servers, namely a standard-less and secretive process that allowed the all White supervisors to refuse to promote or hire deserving African-Americans as bartenders.

94. As a direct and proximate result of said discrimination, Plaintiff and the class suffered and continues to suffer actual damages, in forms including without limitation lost income, mental anguish, and pain and suffering. They are also entitled to attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### (Discrimination based on race under New York Human Rights Law)

95. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

96. New York Executive Law § 296 (1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's .... race...to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

97. Defendants discriminated against Plaintiff and the Class members by failing to promote or hire them as bartenders solely because their race.

98. This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African-American applicants and servers, namely a standard-less and secretive process that allowed the all White supervisors to refuse to promote or hire deserving African-Americans as bartenders.

99. Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

100. Defendants engaged, and continue to engage in unlawful discriminatory practices in

        violation of the New York Executive Law § 296 (6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

101. As a result of Defendants' discrimination, Plaintiff and the Class members suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering. They are also entitled to attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(Discrimination based on race under New York City Human Rights Law)**

102. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

103. The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived. . . .race . . . .to refuse to hire or employ or to bar or to discharge form employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

104. Defendants discriminated against Plaintiff and the Class members by failing to promote or hire them as bartenders solely because their race.

105. This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African-American applicants and servers, namely a standard-less and secretive process that allowed the all White supervisors to refuse to promote or hire deserving African-Americans as bartenders.

106. The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful

discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

107. Defendants engaged, and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

108. As a result of Defendants' discrimination, Plaintiff and the Class members suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering. They are also entitled to attorney's fees and costs.

### FIFTH CLAIM FOR RELIEF
### (Discrimination based on color under New York Human Rights Law)

109. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

110. New York Executive Law § 296 (1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's .... color...to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

111. Defendants discriminated against Plaintiff and the Class members by failing to promote or hire them as bartenders solely because their color.

112. This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African-American applicants and servers, namely a standard-less and secretive process that allowed the all White supervisors to refuse to

promote or hire deserving African-Americans as bartenders.

113. Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

114. Defendants engaged, and continue to engage in unlawful discriminatory practices in violation of the New York Executive Law § 296 (6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

115. As a result of Defendants' discrimination, Plaintiff and the Class members suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering. They are also entitled to attorney's fees and costs.

### SIXTH CLAIM FOR RELIEF
### (Discrimination based on color under New York City Human Rights Law)

116. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

117. The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived. . . .color . . . .to refuse to hire or employ or to bar or to discharge form employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

118. Defendants discriminated against Plaintiff and the Class members by failing to promote or hire them as bartenders solely because their color.

119. This discrimination was a result of intentional actions by Defendants, deliberate

indifference by Defendants, and/or the result of Defendants maintaining a policy or practice that has a disparate impact on African-American applicants and servers, namely a standard-less and secretive process that allowed the all White supervisors to refuse to promote or hire deserving African-Americans as bartenders.

120. The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

121. Defendants engaged, and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

122. As a result of Defendants' discrimination, Plaintiff and the Class members suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering. They are also entitled to attorney's fees and costs.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff and the class demand a trial by jury and judgment against all Defendants as follows:

    a. An order certifying this case as a class action under Fed. R. Civ. P. 23;

    b. A judgment declaring that Defendants have committed the violations of law alleged in this action;

    c. Actual or compensatory damages against all Defendants in an amount to be proven at trial;

   d.  Punitive Damage;

   e.  Pre-judgment interest; and

   f.  Reasonable attorney's fees and costs;

Together with such other and further relief that the Court deems just.

Dated: New York, New York
    November 3, 2017

         ROBERT WISNIEWSKI P.C.

       By: */ss/ Robert Wisniewski*
        Robert Wisniewski, Esq.
        Attorney for Plaintiff
        225 Broadway, Suite 1020
        New York, New York 10007
        (212) 267-2101